MICHAEL ESPERT

*v.*

HORATIO R. WILSON.

*Opinion filed June 19, 1901.*

1. SPECIFIC PERFORMANCE—*the court may hear evidence of the surrounding circumstances.* On bill for specific performance the court may inquire whether in equity and good conscience the contract should be enforced, and in determining this question may hear evidence of the circumstances under which the contract was made, and is not confined to the terms of the contract as written.

2. SAME—*a contract will not be specifically enforced if it will work injustice.* A contract for the sale of land will not be specifically enforced if it would work injustice to do so, whether the contract is enforceable at law or not.

*Wilson* v. *Espert,* 90 Ill. App. 111, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

PENCE & CARPENTER, for appellant:

A vendor is as well entitled to specific performance in equity as the vendee. It is unimportant that he has also a remedy at law. *Andrews* v. *Sullivan,* 2 Gilm. 327; *Burger* v. *Potter,* 32 Ill. 66; *Towner* v. *Tickner,* 112 id. 217; *Robinson* v. *Appleton,* 124 id. 276.

Whenever a contract stipulates that on the failure of one of the parties to perform it shall become null and void, it may be rescinded only by the party who is not in default and who is injured by the other's failure of performance. Fry on Specific Per. (3d Am. ed.) secs. 1024, 1025; Wood on Landlord and Tenant, sec. 226; *Roberts* v. *Wyatt,* 2 Taunt. 268; *Doe* v. *Burch,* 1 M. & W. 402; *Hyde* v. *Watts,* 12 id. 254; *Graves* v. *Wilson,* 25 Beav. 290; *Jackson* v. *Oakshott,* 14 Ch. Div. 851; *Mason* v. *Caldwell,* 5 Gilm. 204; *Bolton* v. *Johnson,* 57 Ill. App. 178; *Hale* v. *Cravener,* 128 Ill. 408; *Hunt* v. *Smith,* 139 id. 296.

Whenever a contract stipulates for liquidated damages in a case of breach, a court of chancery may decree specific performance unless the agreement gives an option either to pay or to perform. There was no such option in this contract. Fry on Specific Per. (3d Am. ed.) 58-61; Waterman on Specific Per. secs. 21, 23, 25; Story's Eq. Jur. 1318; *Chillinor* v. *Chillinor,* 2 Ves. Sr. 528; *Howard* v. *Woodward,* 10 Jur. (N. S.) 1123; *Long* v. *Bowring,* 33 Beav. 585; *Hall* v. *Sturdivant,* 46 Me. 34; *Dooley* v. *Watson,* 1 Gray, 414; *Hooker* v. *Pynchon,* 8 id. 550; *Ayrcs* v. *Pease,* 12 Wend. 393; *Broadwell* v. *Broadwell,* 1 Gilm. 612; *Lowe* v. *Nolte,* 16 Ill. 477; *Lyman* v. *Gedney,* 114 id. 388.

Whenever a contract in writing is clear, unambiguous and unequivocal in its terms as to the rights of the parties, those rights are fixed and controlled by the written instrument, and all prior or contemporaneous stipulations are conclusively presumed to be embraced in the writing, and it is not competent to show by intrinsic evidence that the writing was not to be the sole memorial of the undertaking. *Broadwell* v. *Broadwell,* 1 Gilm. 599; *Siebert* v. *McAvoy,* 15 Ill. 106; *Gordere* v. *Browning,* 18 id. 491; *Goltra* v. *Sanasack,* 53 id. 456; *Fowler* v. *Black,* 136 id. 378; *Heisen* v. *Heisen,* 145 id. 658; *Schultz* v. *Bank,* 141 id. 116; *Bank* v. *Railway Co.* 145 id. 208; *Stettauer* v. *Hamlin,* 97 id. 312; *Bearss* v. *Ford,* 108 id. 16.

HECKMAN, ELSDON & SHAW, (EDWIN BURRITT SMITH, of counsel,) for appellee:

Parol evidence of all the circumstances of the transaction was properly admitted to rebut any presumption that the deposit was intended as security for performance by the buyer. 1 Spence's Eq. Jur. 557; *Bank* v. *Fordyce,* 9 Pa. St. 275; *Chalfant* v. *Williams,* 35 id. 215; *Dooley* v. *Watson,* 1 Gray, 414; *Ropes* v. *Upton,* 125 Mass. 258; *Lyman* v. *Gedney,* 114 Ill. 388.

Also to rebut any presumption that the forfeiture clause was solely for the benefit and at the option of

the seller.  *Herron* v. *Rich,* 95 N. C. 500; *Veth* v. *Gierth,* 92 Mo. 97; *Stoutenburg* v. *Tompkins,* 9 N. J. Eq. 332; *Lennon* v. *Stiles,* 5 N. Y. Supp. 870; *Fowler* v. *Black,* 136 Ill. 363.

And to show that it would be unjust and inequitable to enforce the contract in question.  1 Greenleaf on Evidence, (ed. 1899,) sec. 296*a*; *Railway Co.* v. *Reno,* 113 Ill. 39; *Herron* v. *Rich,* 95 N. C. 500.

A court of equity will not decree specific performance if, under all the circumstances, such a decree would be inequitable.  *King* v. *Hamilton,* 4 Pet. 311; *Cathcart* v. *Robinson,* 5 id. 264; *Stoutenburg* v. *Tompkins,* 9 N. J. Eq. 332; *Railway Co.* v. *Schoeneman,* 90 Ill. 258; *Gould* v. *Banking Co.* 136 id. 60; *Dintleman* v. *Gilbert,* 140 id. 597; *Morse* v. *Seibold,* 147 id. 318; *McDonald* v. *Minnick,* 147 id. 651; *Barrett* v. *Geisinger,* 179 id. 240.

The contract must be clear to maintain specific performance.  2 Parsons on Contracts, 720; *Gardiner* v. *Harback,* 21 Ill. 129; *Newlan* v. *Harrington,* 24 id. 206; *Ryan* v. *Bank,* 148 id. 349.

A court of equity will not decree specific performance if the minds of the parties did not meet.  Wharton on Evidence, secs. 1028, 1029, 1243; Bigelow on Fraud, 526; *Stoddard* v. *Hart,* 23 N. Y. 556; *Linington* v. *Strong,* 111 Ill. 152.

Mr. JUSTICE CARTER delivered the opinion of the court:

Espert, the appellant, obtained a decree in the circuit court of Cook county against Wilson, the appellee, compelling him, Wilson, to specifically perform his written contract to purchase from Espert the north fourteen feet of a certain lot owned by Espert.  The decree provided that in case Wilson should refuse to accept the deed and pay the purchase money the strip of land should be sold by the master at public sale, and that Espert should have judgment and execution against Wilson for any deficiency.  The Appellate Court reversed the decree and remanded the cause with directions to dismiss the bill,

and from that judgment Espert took this appeal to this court.

The contract provided that Wilson was to pay $7000 for the fourteen feet, and recited that he had paid $100 of the amount as earnest money, to be applied on such purchase when consummated. It also contained this provision: "Should said purchaser fail to perform this contract promptly on his part at the time and in the manner herein specified, the earnest money paid as above shall be forfeited as liquidated damages, and this contract shall thereupon become and be null and void. Time is of the essence of this contract and of all the conditions hereof." Wilson did not claim that Espert had failed to comply with the terms of the contract on his part, but refused to take the property and pay the balance of the purchase money for other reasons. The defenses chiefly relied on by him in his answer to the bill and on the hearing, as well as in this court, were and are: First, that under a proper construction of the contract he had the option to take the property at the price named or to forfeit the $100 paid as earnest money, and that he had elected to forfeit said earnest money; second, that he, Wilson, at the time the contract was made, was interested in the premises adjoining on the north the strip in question, (said premises being the property of his wife,) and had negotiated a sale of the same on the condition that he could procure said strip to be attached to said premises, but also on the condition that the proposed purchaser could withdraw from such proposed purchase within a certain time; that Espert had knowledge of such proposed sale and of his necessities in the premises and demanded an excessive price for said fourteen feet, to-wit, $500 per front foot, when it was worth not to exceed $300 per front foot; that he told Espert he wanted only an option to purchase said fourteen feet in order to sell his said premises to said proposed purchaser, who would not buy unless he could procure the fourteen feet also; that

otherwise he, Wilson, did not want the strip; that Espert expressed a willingness to give him such option, but would not agree to sell for less than $500 per front foot; that a contract was drawn by Espert's attorney containing the provision as above set out, except that it contained also the clause, "at the option of the vendor," making it read, "the earnest money paid on above shall, *at the option of the vendor*, be forfeited as liquidated damages, and this contract shall thereupon become and be null and void;" that because of his contemplated sale of his premises, including the fourteen feet, he refused to sign the contract as drawn by Espert's attorney, but in his own interest struck out the words "at the option of the vendor" and then signed the contract, after which Espert also signed it, having knowledge that Wilson had stricken out said words; that said proposed purchaser afterward withdrew from said proposed purchase of his premises and said strip, and that he, Wilson, then had no use for or need of the strip, and so informed Espert and declined to take and pay for the same, preferring to forfeit said earnest money, believing that he had the option by the contract so to do; that he had since sold his premises, and that, because of the facts stated, the contract, if construed as binding him absolutely to purchase and pay for the strip, is unreasonable and unjust, and that it would be inequitable for a court of equity to compel him to perform it specifically.

The arguments of counsel have been addressed chiefly to the first of the two defenses mentioned,—the construction of the contract,—that is, whether it gave Wilson the option contended for by him. Finding, as we do, that the second defense was established, it becomes unnecessary to consider the first.

The parties were neighbors, and it is very clear from the evidence *aliunde* that Wilson did not want, and did not intend, to buy the strip of Espert unless he should make the proposed sale of it with his wife's premises,

and that Espert knew of this fact. It is equally clear
that the price Wilson was to pay for the strip was at
least one and a half times its value; that as a part of
adjacent property the strip is of much more value than
it would be separated therefrom in ownership. It seems
apparent that if this strip were to be sold at a judicial
sale separated from the lot of which it forms a part,
much of its value would be sacrificed, and that Espert,
at a bid below its real value, would be able to retain the
property and recover from Wilson the difference between
his bid and the excessive price fixed by the contract. It
is not meant that the decree, if correct in compelling spe-
cific performance, is erroneous in providing for the mas-
ter's sale in case Wilson refuses to accept a deed and
pay the purchase money, but only that the effect of the
decree on property of such a character and so situated,
and on the equitable rights of the parties in such a case,
ought to be considered by a court of equity in exercising
its sound legal discretion to grant or to refuse to grant
the decree.

It is, however, contended by counsel for appellant,
that this testimony heard by the chancellor was incom-
petent; that the contract must speak for itself of the
intention of the parties, and that it cannot be varied by
parol evidence of what took place before and at the time
of its execution. Such is undoubtedly the rule in actions
on written contracts, but when a court of equity is asked
to compel the specific performance of the contract the
inquiry may be made whether in equity and good con-
science the court ought to specifically enforce it,—and
this involves the hearing of evidence of extrinsic facts.
It has long been the established rule that it rests in the
sound legal discretion of courts of equity whether or not
they will compel the specific performance of any particu-
lar contract. Such a discretion is not a mere arbitrary
discretion, but a discretion to be reasonably exercised
upon a full and fair consideration of all of the facts

and circumstances involved. In *McDonald* v. *Minnick,* 147 Ill. 651, we said (p. 659): "It is the established rule that courts will decree the specific performance of contracts only when, in the exercise of a sound legal discretion, it finds, from all the circumstances, it subserves the ends of justice. It is never decreed as a matter of course, even when a legal contract is shown to exist. True, that relief cannot be denied from mere whim or caprice, but, as in every other case when legal discretion is invoked, the action must be reasonable. We cannot say, from all the facts and circumstances in proof in this case, that, taken in connection with the very loosely drawn contract between the parties, a court of equity ought to have specifically enforced its performance." Many cases to the same effect, in this and other courts, might be cited were it necessary, but the following are sufficient: *Barrett* v. *Geisinger,* 179 Ill. 240; *King* v. *Hamilton,* 4 Pet. 311; *Cathcart* v. *Robinson,* 5 id. 264; *Stoutenburg* v. *Tompkins,* 9 N. J. Eq. 332; *Chicago and Alton Railroad Co.* v. *Schoeneman,* 90 Ill. 258; *Gould* v. *Elgin City Banking Co.* 136 id. 60; *Dintleman* v. *Gilbert,* 140 id. 597; *Morse* v. *Seibold,* 147 id. 318.

In *Stoutenburg* v. *Tompkins, supra,* the court said: "The defendant relies upon the general ground that it would be inequitable and unjust, under the circumstances of the case, to compel him specifically to perform this agreement. This is a good defense. The court will not become an instrument of injustice, and if the case presented is such that it would be unconscientious to grant the complainant the relief he seeks, and repugnant to a just sense of right between man and man, the court will refuse its aid." The application of this equitable doctrine does not depend merely on the terms of the contract as written, nor upon its construction, but the court may hear evidence of the circumstances under which it was entered into and concerning the subject matter of the contract. As said in 22 Am. & Eng. Ency. of Law, 1077: "The courts are very liberal in admitting evidence in

favor of the defendant, and any good reason why the equitable relief demanded should not be granted may be shown by competent parol evidence. To justify refusing specific performance, much less proof is required than to sustain a bill to set aside a contract for fraud or mistake."

Counsel for appellant contend that the contract is plain and unambiguous on its face; that Wilson, the appellee, cannot, under its terms, make his own default in payment a ground of rescission; that the parties were both *sui juris* and men of affairs; that no fraud or mistake of fact is relied on, only a mistake of law,—the proper construction of the written contract,—and that the contract is binding between the parties according to its terms and should be enforced. For the sake of the argument let it be so conceded, and nothing more would be established than that Espert has a remedy at law, and it would not follow that a court of equity should not, upon a full consideration of the contract and the effect of its specific enforcement and of the facts and circumstances under which it was executed, sustain the defense that it would be unfair and inequitable to require its specific performance. We do not mean to say that specific performance will be refused simply because there is a remedy at law, but only that it will be refused, whether the contract is enforceable at law or not, when it would be inequitable to enforce it specifically.

For the reasons stated we are of the opinion that the decree requiring the specific performance of this contract ought not to have been entered, and that the Appellate Court decided correctly in reversing it and in directing the dismissal of the bill. The judgment of that court will accordingly be affirmed.        *Judgment affirmed.*